## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UTILITY LINES CONSTRUCTION SERVICES INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. No. 11-93-SLR |
| HOTI, INC. f/k/a HIGHLINES CONSTRUCTION COMPANY, INC., and DIVERSIFIED GROUP, L.L.C., | ) ) ) ) | |
| Defendants. | ) ) | |

Somers S. Price, Jr., Esquire of Potter Anderson & Corroon, LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Ben W. Subin, Esquire of Holland & Knight, LLP.

Matt Neiderman, Esquire and Gary William Lipkin, Esquire of Duane Morris LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Robert Redfearn, Jr., Esquire of Simon, Peragine, Smith & Readfearn, LLP.

## MEMORANDUM OPINION

Dated: July 29, 2011
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Utility Lines Construction Service, Inc. ("ULCS") brought claims against defendants HOTI, Inc. ("HOTI") f/k/a Highlines Construction Company, Inc. ("Highlines"), and Diversified Group, L.L.C. ("Diversified") for fraud, fraudulent misrepresentation, and breach of contract. (D.I. 1 at ¶¶ 30, 40, 53) ULCS is also seeking enforcement of a guaranty between ULCS and Diversified. (*Id.* at ¶ 63) In the complaint, ULCS alleges that defendants had knowledge about liabilities associated with the sale of Highlines' material assets to ULCS, yet failed to disclose those liabilities in compliance with the contracted terms of sale. (*Id.* at ¶ 14) Presently before the court is defendants' motion to dismiss or, in the alternative, transfer or stay the litigation to allow a co-pending Louisiana suit (the "Louisiana lawsuit")[1] to resolve before proceeding. (D.I. 10) The court has jurisdiction pursuant to 28 U.S.C. § 1332 and § 1367. For the reasons that follow, the court denies defendants' motion.

## II. BACKGROUND

### A. The Parties

ULCS is in the business of providing maintenance and construction services to the gas and electric utilities markets. (D.I. 15 at ¶ 5) It is a subsidiary of Utilicon Solutions, LTD ("Utilicon") which, in turn, is a subsidiary of Asplundh Tree Expert Co. ("Asplundh"). (D.I. 13, ex. A at ¶ 15) ULCS is incorporated under the laws of the Commonwealth of Pennsylvania with its principal place of business in Willow Grove,

---

[1]The Louisiana lawsuit is *Herbert D. Hughes, II, et al. v. Entergy Corp., et al.*, La. Civ. Dist. Ct., Civ. No. 2010-2784.

Pennsylvania. (D.I. 1 at ¶ 1) HOTI, f/k/a Highlines, is a wholly owned subsidiary of Diversified. (*Id.* at ¶ 11) Both Highlines (a corporation) and Diversified (a limited liability corporation) are incorporated under the laws of the State of Louisiana.[2] (*Id.* at ¶¶ 2-3)

On December 14, 2009, ULCS and Highlines entered into an Asset Purchase Agreement (the "APA")[3] under which ULCS agreed to purchase Highlines' material assets. (D.I. 1 at ¶ 50) In addition to the APA, ULCS and Diversified executed a written Guaranty Agreement (the "Guaranty")[4] under which Diversified promised Highlines full performance of the APA. (*Id.* at ¶ 63) The APA and Guaranty contain choice of law provisions designating Delaware as the proper venue for disputes relating to these documents when the amount in controversy exceeds $175,000.[5] (D.I. 14 at 3)

## B. The Louisiana Lawsuit

The Louisiana lawsuit was filed in Civil District Court for Orleans Parish,

---

[2]Highlines' principal place of business is specifically identified as Harahan, Louisiana. (D.I. 15-3, ex. C at 1) Diversified's principal place of business is broadly identified as the State of Louisiana. (D.I. 1 at ¶ 3)

[3]The APA is docketed as exhibit A to D.I. 15-2. The court hereinafter cites the APA directly as "APA § ___".

[4]The Guaranty is docketed as exhibit D to D.I. 15-3. The court hereinafter cites the Guaranty directly as "Guaranty § ___".

[5]APA § 14.7 provides in relevant part: "[T]his Agreement and all documents to be executed pursuant to this Agreement, including, but not limited to, the Guaranty, the Non-Compete Agreement, and any assignments or bills of sale, shall be construed in accordance with, and governed by, the laws of the State of Delaware without giving effect to conflict of laws." Guaranty § 8 provides in relevant part: "In all respects, including all matters of construction, validity and performance, this Guaranty and the obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to conflict of laws."

Louisiana, by Herbert D. Hughes, II ("Hughes").[6] *See id.* Hughes is the President, CEO and sole shareholder of Diversified, which owned Highlines as a subsidiary. (D.I. 12 at ¶ 2) Hughes alleges violation of the Louisiana Unfair Trade Practice Act, fraud, detrimental reliance, tortious interference with a contract, civil conspiracy, and unjust enrichment. (D.I. 13, ex. A at ¶¶ 26-27, 33, 37-38, 40-41, 43-45, 46-47) The Louisiana lawsuit centers on the contractual relationship(s) between Highlines and Entergy. (D.I. 16 at ¶ 7)

For forty years, Highlines has been doing business with various Entergy entities.[7] (D.I. 13, ex. A at ¶ 7) Highlines derived between 75-90% of its revenue from these contracts. (D.I. 12 at ¶ 4) In an effort to further their business relationship, and with assurance of continued business from Entergy, Entergy requested that Highlines invest $7 million in specialized equipment explicitly for use on Entergy contracts. (*Id.*) Highlines obliged. (*Id.*)

In February 2009, Diversified sought buyers for Highlines' material assets. Diversified entered negotiations with a few companies, including ULCS, an acquisition arm of Asplundh. By May 2009, Highlines received two offers: a $32 million deal with Mastec; and a deal valued at over $45 million from Asplundh. Highlines did not accept either offer. (*Id.* at ¶ 5)

In the spring of 2009, Highlines submitted bids for several Entergy entities'

---

[6]Hughes is a resident of Louisiana. (D.I. 13 at ¶ 3)

[7]These Entergy entities include: the Entergy Corp.; Entergy Arkansas, Inc.; Entergy Gulf States Louisiana, L.L.C.; Entergy Louisiana, L.L.C.; Entergy New Orleans, Inc.; Entergy Operations, Inc.; Entergy Services, Inc.; and Entergy Texas, Inc. (D.I. 13, ex. A at ¶ 2)

projects. The bids had significant reductions in the allotted overhead expense to secure the award of the Entergy contracts. (*Id.* at ¶ 6) Despite having the lowest bid and highest safety record of all the subcontractors bidding on the Entergy contracts, Highlines was not awarded the contracts. (*Id.*)

During the summer of 2009, Cleco Power, L.L.C. ("Cleco"), which is not affiliated with any Entergy entity, awarded Amperical Solutions, Inc. ("Amperical") its Richard-Habetz 230 KV Electric Transmission Line 212 Project (the "Project"). (D.I. 1 at ¶ 16) Amperical sought a subcontractor for the Project. (*Id.* at ¶ 17) Feeling pressure from the lack of contract work from Entergy, Highlines produced an under-valued bid, and won the Amperical subcontract ("Amperical subcontract"). (*Id.* at ¶ 21)

According to ULCS' complaint, however, Highlines' bid calculation contained errors and discrepancies including: improper estimation of foundation work; insufficient allotment of labor and manpower; insufficient sequencing of work; insufficient delivery methods; overhead miscalculations; and miscalculations for boring costs. (*Id.*) Regardless of these errors, Highlines accepted the Amperical subcontract. (*Id.* at ¶ 22)

In August 2009, Entergy's Director of Supply Chain Services, Donald J. Brignac, Jr. ("Brignac"), informed Highlines that its contracts were being cancelled and the business relationship was suspended, disallowing Highlines to submit bids on future Entergy projects. (D.I. 12 at ¶ 8) As the prospect of losing this business would potentially bankrupt Highlines, Diversified requested 45 days to find a buyer for Highlines, which Entergy allowed. (*Id.*)

With the Entergy contracts suspended, and in desperate need to be sold quickly,

Highlines positioned itself as an attractive acquisition target. Highlines toted its Amperical subcontract as a "newly commenced, lump sum contract" despite the bid miscalculations and losses associated with the Project. (D.I. 15 at ¶ 15) Asplundh, via ULCS, again expressed an interest in acquiring Highlines and the parties entered new negotiations. (D.I. 12 at ¶ 9) As part of its due diligence, Diversified introduced Asplundh as the potential purchaser to Entergy. (*Id.*) Subsequently, and throughout the acquisition negotiations, Asplundh and Entergy had meetings excluding Highlines and Diversified. (*Id.*) As a result of the lost Entergy contracts, Highlines was valued by Asplundh at less that it had been worth in May 2009; the final negotiations allowed Asplundh to acquire Highlines' assets for $7 million plus other consideration. (*Id.* at ¶ 11) Once the sale was closed on December 26, 2009, Entergy allowed ULCS to resume Highlines' cancelled and suspended contracts and to bid on new Entergy contracts. (*Id.* at ¶ 12)

In March 2010, Hughes and Diversified brought the Louisiana lawsuit against the Entergy entities, Brignac,[8] as well as Asplundh and its subsidiaries (Utilicon and ULCS). (D.I. 13, ex. A) Hughes alleged that Entergy, in a joint effort with Brignac and Asplundh, devised a plan to falsely devalue Highlines in retaliation against Hughes because he upset Entergy operations by engaging in disputes with Entergy and by notifying Entergy "of concerns and issues in their professional relationship." (*Id.*, Second Supplemental and Amending Petition for Damages at ¶ XIV) Hughes suggests that Entergy is a

---

[8]Brignac was brought into the Louisiana lawsuit as a defendant under *respondeat superior* and vicarious liability as he was employed with and working in the course and scope of his employment with Entergy during the relevant times. Brignac is a resident of Louisiana. (D.I. 13, ex. A at ¶ 2)

monopoly in the region, putting Entergy in an advantageous position over its contractors. (*Id.* at ¶ IV)

The Louisiana lawsuit is presently underway in Louisiana Civil District Court regarding whether the course of events leading up to the parties executing the APA and Guaranty could constitute fraud (committed by the Entergy entities, Briganc, Asplundh and its subsidaries Utilicon and ULCS), or a conspiracy between the Entergy entities, Brignac, Asplundh and its subsidaries. HOTI also asserts a series of other allegations. *See Herbert D. Hughes, II, et al. v. Entergy Corp., et al.*, La. Civ. Dist. Ct., Civ. No. 2010-2784.

## C. The Present Suit

The present litigation was brought by ULCS against HOTI and Diversified regarding the terms of the APA and Guaranty. As noted *supra*, ULCS and HOTI are the parties involved with the APA, and ULCS and Diversified are the parties named in the Guaranty. The terms of the APA changed Highlines' name to HOTI. (D.I. 13, ex. A, First Supplemental and Amending Petition for Damages at ¶ II) The APA further stipulated that HOTI had an affirmative obligation to ULCS to maintain its books and records in a materially complete and accurate way in compliance with good business practice, and in accordance with generally accepted accounting principles ("GAAP"). (*See* APA §§ 5.1.4, 5.1.5., 5.1.27, 7.1.3, 7.1.7, 8.1.1, and 8.1.4)

ULCS alleges that HOTI never disclosed, and actively concealed, liabilities associated with the Amperical subcontract prior to the execution of the APA. (D.I. 1 at ¶ 14) ULCS further alleges that at closing, HOTI affirmatively certified in writing "that all

representations and warranties, including information in any document (which includes the interim financials) provided by HOTI were true and correct in all material respects and that HOTI complied with all of the covenants in the [APA]." (*Id.*)

ULCS alleges that HOTI committed fraud, made fraudulent misrepresentations regarding the Amperical subcontract, and that those misrepresentations resulted in a breach of the APA. (*Id.* at ¶¶ 30, 40, 53) During the execution of the Amperical subcontract, HOTI is alleged to have performed defective construction work on the Project as a result of the erroneous bid calculations and in an effort to cut costs; Ampirical and Cleco have demanded the replacement/remediation of that defective work. (*Id.* at ¶ 56) ULCS alleges that under the APA,

> HOTI agreed to remain liable for any prior acts, which include but are not limited to liabilities, obligations and claims whether known or unknown, which exist on or arise after the Closing Date, and which arise or are alleged to have arisen as a result of Seller's ownership, operation, and/or conduct of the Business prior to the closing date.

(*Id.* at ¶ 59) (citing APA §1.7) (internal quotations omitted) At present, HOTI has yet to indemnify ULCS regarding the liabilities associated with the replacement/remediation demanded by Amperical and Cleco. (D.I. 1 at ¶ 56) To that end, ULCS is seeking enforcement of the written Guaranty executed by Diversified to compel full performance of the APA by HOTI. (*Id.* at ¶ 63)

## III. STANDARDS OF REVIEW

### A. Motion for Transfer

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties

and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 208 (D. Del. 1998).

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favor the defendants." *Bergman v. Brainin*, 512 F. Supp. 972, 973 (D. Del. 1981) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)); *Medicis Pharmaceutical Corp. v. Nycomed U.S. Inc.*, Civ. No. 10-419-SLR, 2011 WL 1230276, at *2 (D. Del. Mar. 31, 2011). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 567-68 (D. Del. 2001); *Shutte*, 431 F.2d at 25. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998); *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, Civ. No. 01-199, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001); *Padcom, Inc. v. NetMotion Wireless, Inc.*, Civ. No. 03-983-SLR, 2004 WL 1192641, at *7 (D. Del. May 24, 2004). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests

8

of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P.,* 816 F. Supp. 973, 976 (D. Del. 1993).

The Third Circuit has indicated that the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the Third Circuit has identified potential factors it characterized as either private or public interests. The private interests include:

> (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trail in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). The public interests include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted).

### B. Failure to Join an Indispensable Party

Rule 12(b)(7) provides for the dismissal of a claim where the plaintiff has failed to join a required party. Fed. R. Civ. P. 12(b)(7). For the purpose of Rule 12(b)(7), the court accepts as true the factual allegations of the complaint. *See Jurimex Kommerz Transit G.M.B.H. v. Case Corp.,* 65 Fed. Appx. 803, 805 (3d Cir. 2003). A court, in evaluating such a motion, applies the two-part test found in Rule 19. The first part of

9

this test asks whether the absent party is necessary for adjudication of the issue. The second part of the test is equitable in nature, and is directed to whether a necessary party is indispensable to a fair resolution of the issues. *Id.* Rule 19(a) provides that an absent person is a necessary party if he is subject to service of process and either: (1) in his absence, complete relief cannot be accorded among the parties; or (2) the absent person claims an interest in the subject matter and that his absence will, as a practical matter, either prejudice his ability to protect that interest or result in multiple or otherwise inconsistent obligations. Fed. R. Civ. P. 19(a).

If a person is deemed necessary under Rule 19(a) but cannot be joined, the court must ascertain the extent to which prejudice will result to the non-party; the ability of the court to shape relief to avoid prejudice to absent persons; the adequacy of relief available to parties in the necessary party's absence; and the adequate remedy available to the plaintiff if the action is dismissed for nonjoinder. Fed. R. Civ. P. 19(b). Rule 19(b) only applies where a person should be made a party under Rule 19(a). *See Field v. Volkswagenwerk AG,* 626 F.2d 293, 300 (3d Cir. 1980). Thus, if a party is not necessary under Rule 19(a), the court need not conduct an analysis under Rule 19(b).

### C. Motion to Stay

"The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1975) (hereinafter *"Colorado River"*); *accord University of Maryland v. Peat Marwick Main & Co.,* 923 F.2d 265, 275-76 (3d Cir. 1991) ("The general rule regarding

10

simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action.") (citing *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Nevertheless, the Supreme Court has recognized that there may be "'extremely limited circumstances' in which a federal court may defer to pending state court proceedings based on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Ryan v. Johnson*, 115 F.3d 193, 195 (3d Cir. 1997) (citing *Colorado River*, 424 U.S. at 813).

When a litigant urges abstention or dismissal under the *Colorado River* abstention doctrine because of concurrent state and federal litigation, the Supreme Court has identified several factors which should inform the determination of whether exceptional circumstances exist: (1) "whether the state court assumed *in rem* jurisdiction over property;" (2) "the inconvenience of the federal forum;" (3) "the desirability of avoiding piecemeal litigation;" and (4) "the order in which jurisdiction was obtained by the concurrent forums." *Ryan*, 115 F.3d at 196. In addition to the above, it is appropriate to also consider "whether federal law provides the rule of decision on the merits, . . . inadequacy of the state court proceeding to protect the plaintiff's rights, . . . and whether 'either the state or federal suit was a contrived, defensive reaction to the other.'" *Holland v. Hay*, 840 F. Supp. 1091, 1099 (E. D. Va. 1994) (citing *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17-18 n. 23, 26 (1983)). "[N]o one factor is determinative and '[o]nly the clearest of justifications will warrant dismissal.'"

11

*Ryan*, 115 F.3d at 196 (citing *Colorado River*, 424 U.S. at 818-19).

## IV. DISCUSSION

### A. Motion to Transfer

Defendants HOTI and Diversified seek the grant of a transfer to Louisiana state court on the basis of inconvenience. The court is not persuaded by defendants' arguments regarding convenience and the need to transfer. First, transfer of this case to Louisiana is not possible under 28 U.S.C. § 1404(a). *See Pan Am Flight 73 Liason Group v. Dave*, 711 F. Supp. 2d 13, 20 n.3 (D.D.C. 2010) ("A federal court cannot transfer a case to state court pursuant to 28 U.S.C. § 1404(a)."). Second, analysis of the private and public interest factors emphasized by defendants does not compel a conclusion that this is an inconvenient forum. The parties in this case contracted that all disputes arising out of the APA would be governed by Delaware law. It is a logical assumption that this court has more experience applying Delaware state law than the Louisiana state court. With respect to witnesses, generally the parties agree to take depositions of witnesses where they are located (or the court can so order). Moreover, for those cases that get to trial, only a handful of witnesses testify live, and only a very small proportion of those documents produced during discovery are used as trial exhibits. Regarding discovery, documents generally are stored, transferred, and reviewed electronically. It would be surprising to the court to find that sophisticated litigants, such as those at bar, still maintain their business records in hard copy, thus requiring either travel to Louisiana for review of the documents or the copying and transporting of documents.

12

Deference should be given to plaintiff's choice of forum so long as there is some legitimate reason to bring suit in that forum. *C.R. Bard, Inc.,* 997 F. Supp. at 562. In this case, not only was it ULCS' choice to bring suit in Delaware, but the parties selected Delaware as their preferred forum for litigation regarding the APA and the Guaranty. (D.I. 15 at ¶¶ 17-18) It is a rare occurrence when Delaware courts do not honor the choice of law provisions agreed to by the parties in a binding contract. *See Abry Partners V, L.P. v. F & W Acquisition LLP,* 891 A.2d 1032, 1048 (Del. Ch. 2006) ("[w]hen parties have chosen a state's contract law to govern their contract, it is illogical to assume that they wished to have the enforceability of that contract judged by another state's law."). In conclusion, plaintiff's choice of forum is appropriate, and defendants' motion to transfer is denied.

## B. Motion to Dismiss

Defendants HOTI and Diversified argue that ULCS' complaint must be dismissed for failure to join the Entergy entities, Asplundh, and Utilicon, which are all necessary and indispensable parties to this action. In the case at bar, "ULCS alleges that Diversified and HOTI committed fraud and misrepresentation in connection with the sale of Highlines' material assets to ULCS." (D.I. 11 at 15-16) Furthermore, ULCS claims that there was a breach of the APA and seeks enforcement of the Guaranty.

Under the first part of Rule 19's two-part test, there are two possible circumstances warranting joinder of an absent party: "(1) [if] in his absence, complete relief cannot be accorded among the parties; or (2) [if] the absent person claims an interest in the subject matter and that his absence will, as a practical matter, either

13

prejudice his ability to protect that interest or result in multiple or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a).

Here, complete relief can be accorded between ULCS, HOTI, and Diversified. Under Rule 19(a)(1)(A), complete relief is possible where only the named parties to the contract are party to the claim. The named parties in the APA and Guaranty are HOTI, Diversified and ULCS and, because the parties named in the contract are the named parties in the claims, complete relief is possible. Additionally, in the present action, ULCS is alleging that HOTI made fraudulent misrepresentations in violation of the APA. "With respect to the joinder of nonparties, this court has previously held that in claims for fraud and misrepresentation, while there may be some overlapping obligations, all persons involved in the contract need not be parties to the action." *See Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 688 (D. Del. 2010) (citing *E.I. duPont de Nemours & Co. v. Rhodia Fiber and Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 124 (D. Del. 2000) *rev'd on other grounds*, 269 F.3d 187 (3d Cir. 2001)). Litigation may proceed without the absent parties.

Furthermore, "Rule 19(a)(1)(B) requires that the absent party 'claim [ ] an interest relating to the subject matter of the action ...' and, where there is no showing that the absent party actually has claimed an interest relating to the subject of the action, the court may deny a motion to dismiss." *Kuhn*, 723 F. Supp. 2d at 692; *see also Axis Specialty Ins. Co. v. Brickman Group Ltd., LLC*, Civ. No. 09-3499, 2010 WL 376784, at *5 n.1 (E. D. Pa. Jan. 28, 2010). In the present suit, none of the allegedly absent parties has taken any action to assert that they have any interest in the subject

14

matter of this litigation. Neither the Entergy entities, Asplundh or Utilicon is a party to the APA or Guaranty, nor is any one of them involved with the Amperical subcontract.

Whether the named parties to this suit will face multiple or otherwise inconsistent obligations as a result of this litigation proceeding without the absent parties is also a factor to be considered when determining if joinder is necessary under 19(a)(1)(B). Comparing the two suits, it is for the Louisiana state court to decide if the Entergy entities, Asplundh and Utilicon conspired to artificially devalue Highlines. In contrast, the issues before **this** court involve HOTI's failure to disclose the liabilities associated with the Amperical subcontract to ULCS in violation of the APA, and enforcement of the Guaranty between ULCS and Diversified to ensure HOTI's performance of the APA. As stated *supra*, the absent parties are not necessary parties to the case at bar. Resolution of the two issues before this court would not lead to multiple or inconsistent obligations for ULCS, HOTI or Diversified, because the APA and Guaranty are only at issue in the instant case (they are not in dispute in the Louisiana litigation) and the absent parties (the Entergy entities, Asplundh and Utilicon) have nothing to do with the APA and Guaranty allegations in the present suit. Therefore, defendants' motion to dismiss is denied.

### C. Motion to Stay

Defendants HOTI and Diversified are seeking stay of the present litigation under the *Colorado River* abstention doctrine. According to *Colorado River*, abstention is appropriate when the circumstances fall into one of three general categories.[9] If the

---

[9]The three general categories warranting abstention include: (1) "cases presenting a federal constitutional issue which might be mooted or presented in a

15

facts of a case do not fall within one of the three categories, as the facts presented in the present litigation do not fall within any of the three categories, the Supreme Court has provided an exceptional circumstances test which still allows for a federal court to abstain under the *Colorado River* doctrine provided that there are parallel state and federal proceedings occurring simultaneously. *See Ryan*, 115 F.3d at 195 (citing *Colorado River*, 424 U.S. at 813). A determination must be made whether the proceedings are parallel, and then an analysis of any exceptional circumstances must weigh in favor of abstention in order for the court to find abstention appropriate under *Colorado River*.

### 1. The Actions are Not Parallel

In order to make a determination regarding the abstention analysis, there must first be a determination of whether the state and federal actions are parallel. *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009). "If the actions are not parallel, then the court lacks the power to address abstention." *American General Life Ins. Co. v. Mann*, Civ. No. 09-434, 2011 WL 446048, at *4 (D. Del. Feb. 3, 2011) (citing *Ryan*, 115 F.3d at 196). Generally, a parallel action involves the same parties and the same claims. *Ryan*, 115 F.3d at 196. The actions, however, are not required to be identical, but they must be "substantially similar." *Sea Colony, Inc. v. Alcan Aluminum Corp.*, 653 F. Supp. 1323, 1326 (D. Del.

---

different posture by a state court determination of pertinent state law"; (2) cases where there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; and (3) cases "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." *Colorado River*, 424 U.S. at 816 (internal citation omitted).

1987).

As an initial matter, the parties in the Louisiana lawsuit are different from those in the present litigation. Diversified, Hughes, Asplundh, and Utilicon have all been dismissed with prejudice from the Louisiana lawsuit, leaving only the Entergy entities, Brignac, ULCS, and HOTI as parties to that litigation. (D.I. 16 at ¶ 9) Conversely, the parties at bar are ULCS, HOTI and Diversified. Diversified's dismissal from the Louisiana lawsuit no longer makes Diversified a party common to both suits.

Furthermore, the specific counts alleged are unique to each case. The present action focuses on ULCS' claims against HOTI and Diversified, consisting of (1) fraud; (2) fraudulent misrepresentation; (3) breach of the APA; and (4) enforcement of the Guaranty. ULCS alleges that HOTI committed fraud and fraudulent misrepresentation when HOTI had knowledge of the losses associated with the Amperical subcontract, yet failed to disclose said knowledge to ULCS despite HOTI's contractual obligation to do so under the APA. (D.I. 1 at ¶ 14) ULCS asserts that HOTI's failure to disclose the Amperical subcontract liabilities was a breach of the APA and, thus, is seeking enforcement of the Guaranty by Diversity to force HOTI into complying with the APA. (*Id.* at ¶ 63)

On the other hand, as described *supra*, the counts in the Louisiana lawsuit include: (1) violation of the Louisiana Unfair Trade Practices Act; (2) fraud; (3) detrimental reliance; (4) tortious interference with contract; (5) civil conspiracy; and (6) unjust enrichment. (D.I. 16 at ¶ 6) While fraud is a count shared between the two cases, they are distinct claims. The fraud in Louisiana concerns Entergy and ULCS' collusion efforts to devalue HOTI, while the fraud in the case at bar centers on HOTI's

17

misrepresentation of the Amperical subcontract. (D.I. 13, ex. A at ¶¶ 34-36; D.I. 1 at ¶¶ 28-30)

Moreover, each case involves distinct contracts. The Louisiana lawsuit is focused on HOTI's Entergy contracts and misrepresentations made therewith. (D.I. 16 at ¶ 7) Neither the APA or the Guaranty is directly at issue in that case. (*Id.* at ¶ 8) Instead, breach of the APA and enforcement of the Guaranty are the primary focus of the instant action.

Comparing the two cases, the parties are not the same, nor are the claims. The present action will not be resolved through resolution of the Louisiana lawsuit. Therefore, the court will not abstain from hearing this case.

## 2. Exceptional Circumstances

Although the court determined that the proceedings are not parallel, it will nonetheless address the exceptional circumstances doctrine. In determining whether an action presents exceptional circumstances, the court considers six factors: "(1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties."[10] *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999).

---

[10]Only the first four of these factors were delineated in *Colorado River*, the last two are drawn from *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983) ("Besides the four factors expressly discussed in *Colorado River*, there is another that emerges . . . the fact that federal law provides the rule of decision on the merits"; "an important reason against allowing a stay is the probable inadequacy of the state-court proceeding to protect Mercury's rights.").

"[N]o one factor is determinative and '[o]nly the clearest of justifications will warrant dismissal.'" *Ryan*, 115 F.3d at 196 (citing *Colorado River*, 424 U.S. at 818-19).

Given the specific case facts, the first factor is inapplicable as this is not an *in rem* case. The second factor concerns the inconvenience of the forum. As discussed *supra*, the forum is not inconvenient. The third factor involves the desirability of avoiding piecemeal litigation when there are two parallel proceedings under way, one in federal court, and one in state court. Piecemeal litigation can be cause for abstention "when there is evidence of a strong federal policy that all claims should be tried in the state courts." *Ryan*, 115 F.3d at 197-98 (citations omitted). The Third Circuit has stated that "[t]he presence of garden-variety state law issues has not, in this circuit, been considered sufficient evidence of a congressional policy to consolidate multiple lawsuits for unified resolution in the state courts." *Id.* at 198. In the past, this court has held that "breach of contract and fraud claims asserted here can be fairly characterized as garden-variety state law issues," which leads the court to conclude that the third *Colorado River* factor also weighs against abstention. *Nihon Tsushin Kabushiki Kaisha v. Davidson*, 595 F. Supp. 2d 363 (D. Del. 2009).

The fourth *Colorado River* factor concerns which court first obtained jurisdiction over the parties. Not only does consideration of which action was filed first matter when analyzing this factor, but how much progress has been made in each action also is significant. In the present situation, the Louisiana lawsuit was filed in March 2010, ten months before this action. (D.I. 11 at 7) Progress in the Louisiana case has been minimal, giving this court no reason to pause while the Louisiana litigation is underway.

Accordingly, the court concludes that this factor does not weigh in favor of abstention.

The fifth factor considers whether state or federal law governs. In the present action, the parties explicitly contracted for the state laws of Delaware to govern over disputes regarding the APA or the Guaranty, which causes this factor to weigh against abstention. The sixth factor considers whether the state court will adequately protect the interests of all the parties, if the federal case were stayed. Since the court has already determined that the proceedings are not parallel, this factor is moot.

After careful assessment, the court concludes that the two proceedings are not parallel, nor is there an exceptional circumstance that would warrant the abstention. Accordingly, the court agrees with the plaintiff that a stay is not warranted. Defendants' request to stay the instant action until the pending Louisiana litigation has been completed is denied.

## V. CONCLUSION

For the aforementioned reasons, the court denies defendants' motion to dismiss, transfer or stay. An order shall issue.